## WILLIAM F. WELD *versus* JAMES OLIVER.

If personal property held in common, be sold by one of the tenants, as exclusively his own, such sale is a conversion, and the co-tenant may maintain trover therefor, against him ; or he may, in case the purchaser shall also sell and deliver the property as his own, maintain trover against such purchaser for the subsequent conversion. If, in such case, the action is brought against the original purchaser, the measure of damages will be the value of the property at the time of the sale made by him.

Where a tenant in common with the plaintiff, of merchandise, sold the same to the defendant, who sold it again, and the plaintiff made out a bill of his proportion of the price, against the defendant, and called on him, as he had taken the property after he had been informed it belonged to the plaintiff, to pay for the same and save himself further trouble and expense, it was *held* that the plaintiff did not thereby ratify the sale and waive his right to an action of trover against the defendant.

TROVER for the alleged conversion of 491⅐ths hogsheads, or 7870 bushels of salt, on the 21st of April, 1837.

The parties stated a case.

At the trial, before *Putnam J.*, it appeared, that in August, 1836, the plaintiff and Joseph W. Greene of Marblehead were owners, as tenants in common, of the ship Senator, which, in that month, was despatched to Cadiz to obtain a cargo of salt " for account of the owners," the funds being furnished by the plaintiff ; that the ship arrived at Marblehead about the 15th of November, 1836, with 3440 hogsheads of salt ; that the salt was entered at the custom-house by Greene, who gave bonds for the payment of the duties, signed by himself as principal and by a third person as surety ; that one of the bonds had been paid by Greene, and one half of the amount thereof refunded to him by the plaintiff ; that the other bond was still unpaid, there being an unsettled account between Greene and the plaintiff, in which the payment of this bond was included that the salt was stored in Beverly and Marblehead, or kept afloat, with the exception of about 750 hogsheads, which, while the ship was discharging, Greene, without the knowledge of the plaintiff, sold, to be delivered at Philadelphia ; that Greene, on receiving accounts of sales, informed the plaintiff of the transaction, and paid him one half of the amount ; that the plaintiff expressed his disapprobation of the transaction, as one of the witnesses understood, and said it would have been as well to have stored it at Marblehead ; and that there never was any

agreement between the plaintiff and Greene for a division of the salt.

It further appeared, that on the 29th of November, 1836, Greene purchased of the defendant thirty shares of the stock of the Grand Bank, and gave him a bill of sale of a portion cf the salt, amounting to 1000 hogsheads, which was stored in Marblehead, it being agreed, that the salt should be restored to Greene upon his paying the sum of $ 3000, the value of the bank stock, in six months. But there was no evidence to show the precise time when the defendant took thé salt into his own possession. The plaintiff was not notified of this transaction till after Greene's failure, which took place on the 27th of February, 1837 ; and it appeared, that on the 6th of January, he had expressly forbidden Greene to sell any of his salt.

. During the winter Greene sold one half of the quantity stored at Beverly, on his own account ; and the plaintiff, after Greene's failure, took possession of and sold the remaining half. On the day when Greene failed, his interest in the residue of the salt, which was stored in Marblehead, and in that which was afloat, was attached by one of the creditors ; and one half of the salt was sold on the execution in April, and removed by the purchaser, with the consent of the plaintiff.

In April, 1837, the defendant sold the principal portion of the salt which he had purchased of Greene, to various persons and in parcels. On the 9th of May, the plaintiff sent to the defendant a bill of parcels of the whole of the salt so sold, amounting to the sum of $ 3689·07, the salt being charged at $ 3·75 per hogshead, and wrote to him as follows : " Above you have bill of quantity of salt landed from ship Senator, belonging to me. As you have thought proper to take the salt away after you were informed it was my property, you will please call and pay for the same without delay, and save yourself further trouble and expense."

As to the value of the salt, testimony was offered to show, that in November, at the time when Greene made tne bill of sale to the defendant, it was worth $ 3 per hogshead, the price at which it was charged to the defendant.

The market price in Boston, in April, varied from $ 3·75 to $ 3·87, on a credit of from two to four months ; and it was

testified, that salt was worth more at Marblehead than at Boston by the cost of transportation.

The plaintiff contended, that by the transaction which took place between the defendant and Greene, the plaintiff and the defendant became tenants in common of the portion of the salt to which that transaction related ; that the sale by the defendant in lots was a conversion ; and that the measure of damages was the value of the salt at the time of such sale.

The defendant contended, that the plaintiff could not maintain this action at all ; but that if he could, the conversion took place in November ; and that the measure of damages was the value of the salt at that time.

There being no conflicting testimony, the case was taken from the jury, to be submitted to the Court upon the evidence.

If the Court should be of opinion, that the plaintiff was entitled to maintain this action, the defendant was to be defaulted, and judgment entered for such damages as the Court might deem proper ; otherwise the plaintiff was to become nonsuit.

*C. G. Loring, F. C. Loring* and *Dehon,* for the plaintiff, to the point, that the plaintiff and defendant being tenants in common, the sale of the salt by the defendant was a conversion, upon which this action might be maintained, cited *Melville* v. *Brown,* 15 Mass. R. 82 ; *Beaumont* v. *Crane,* 14 Mass. R. 400 ; *Wilson* v. *Reed,* 3 Johns. R. 175 ; *Selden* v. *Hickock,* 2 Caines's R. 167 ; and to the point, that the measure of damages was the value of the salt at the time of such sale, *Greenfield Bank* v. *Leavitt,* 17 Pick. 1.

*Choate* and *Crowninshield,* for the defendant.

*March 8th.*

DEWEY J. delivered the opinion of the Court. The principal question in the present case, is whether an action of trover will lie by one tenant in common of personal chattels against his co-tenant upon no other evidence of conversion by him than a sale and delivery of the entire property as exclusively his own. I am not aware that this question has been distinctly settled by any adjudication of this Court. The case of *Melville* v. *Brown,* 15 Mass. R. 82, which has sometimes been supposed to sanction the doctrine that such a sale was a conversion for which trover would lie, was considered by the

*March 25th*

Court as maintainable upon principles peculiar to itself and of a more limited character, it being a case of an abuse of authority in law, under an attachment on mesne process and subsequent sale on execution by a sheriff.

The elementary books generally state the rule to be, that one tenant in common cannot maintain trover against his co-tenant unless there has been a destruction of the property ; and in some of them it is expressly affirmed, that a sale by one co-tenant, of the entire property, will not amount to a conversion. The cases cited to sustain this latter position are very limited and not of so decisive a character as to put this point at rest. On the contrary, the question may be considered in this Commonwealth as an open one, and to be decided upon what may seem to be sound principle.

The authority of the few English cases usually cited as favoring the doctrine that a sale in such cases is not a conversion, is certainly much weakened by the case of *Barton* v. *Williams*, 5 Barn. & Ald. 395, where it seems to be distinctly stated by two of the learned judges before whom the cause was heard, that a sale of the whole property by one of two tenants in common is a conversion. The case, however, presented other questions, and, in the final disposition of it, this point does not seem to have been settled.

Upon recurring to the origin of the doctrine so frequently stated, that one tenant in common cannot maintain trover against his co-tenant unless there has been a destruction by him of the property thus holden in common, I think, it will be found to have been originally asserted with reference to the right of one tenant in common to sue his co-tenant in an action of trover, for the exclusive use and possession of the common property, and the denying to the other any participation in the same ; and when thus applied, it is entirely correct, upon the familiar principle, that the possession of one co-tenant is the possession of both, and he who has the present possession, cannot be ousted. It is very clear, that one tenant in common cannot maintain an action of trover against his co-tenant for the mere act of withholding from him the use of a chattel, the rights of both being such, that he who has the possession cannot be guilty of a conversion by retaining it. Nor can one tenant in common object

to the mere sale by the other, of the interest of the vendor in the common property, and a delivery over of the chattel to the purchaser. Such a right results from the nature of the relation between the parties ; and to this inconvenience each must be subject, the mere change of possession under such circumstances being no conversion.

But the question arises, whether this be not the limit beyond which if one co-tenant passes, he subjects himself to an action by the other co-tenant for the conversion of his share of the property. The ordinary evidence of conversion is the unlawful taking or detention of goods from the possession of the true owner ; but it is equally true, that he who undertakes to dispose of my goods as his own property, thereby subjects himself to an action of trover. May not the assumption of property in, and a sale of my undivided moiety by my co-tenant, be equally a conversion by him of the moiety belonging to me, as the sale by a stranger of an article in which I had the entire interest, be a conversion of the whole property by the stranger ?

The objection to holding a sale by one tenant in common of the interest of his co-tenant, to be a conversion, as stated in Bac. Abr. *Trover*, is, that such a sale only passes the interest of the vendor, and the interest of the other co-tenant st'll remains in common with the purchaser, and therefore there can be no conversion by the act of sale. But the fact, that the original owner is not divested of his legal property by force of the sale, is equally true in the ordinary cases of the conversion of the whole property by a stranger, but this is not deemed a bar to an action of trover, if the owner elects that mode of redress rather than to reclaim the specific property. To constitute a conversion of the whole property by a stranger, requires only an assumption of authority over, and an actual sale of the property ; and it is not necessary that the legal interest should pass by the sale.

We do not perceive any sufficient reason for taking a distinction between the cases of an unlawful sale of a moiety, or the entire estate ; and as it seems to us, in either case, the assuming an authority to sell, and the making an actual sale of the interest of another under a claim of title in the vendor, may

properly be taken to be a conversion for which an action of trover will lie.    We are sustained in this opinion by an early decision of the Supreme Court of the State of New York in the case of *Wilson* v. *Reed*, 3 Johns. R. 175 ; and the same principle has also been subsequently recognised in the cases of *Hyde* v. *Stone*, 9 Cowen, 230, and *Gilbert* v. *Dickinson*, 7 Wendell, 449.

It is further urged on the part of the defendant, that admitting the doctrine to be true, that a sale by one tenant in common of the interest of the co-tenant is a conversion by the vendor, then it follows, that the sale by Greene, the original co-tenant, being first in the order of time, the conversion was by him, and if this remedy be resorted to, it must be restricted to Greene, who was the first wrongdoer.    This position assumes, that, by the first conversion, the legal rights of the owner are impaired, and that he does not stand in the same relation to the second vendor of the property as he does to the first.    But this is an erroneous view of the subject, as the unlawful sale by the first vendor does not necessarily impair the rights of the other co-tenant or pass any estate unless he ratifies the sale, or, by a judgment and recovery against the vendor, fixes the property in him.    The analogy between the case of a sale by a stranger of the whole property to an individual and a further sale by that individual to another, and the case of a sale of the interest of a part owner by his co-tenant, and a subsequent sale by his vendee, seems to be perfect as to the extent of their remedies.    As to the former of these cases, it is very familiar law, that you may proceed by action either against the first or any subsequent vendor, or person detaining or claiming a right to your chattels, and you may follow them so long as they retain their identity, and either reclaim them specifically or recover their value in damages.    The same rule also applies in a case like the present ; and the plaintiff was at liberty to institute his suit either against Greene, for the sale by him, or waiving this, he might proceed against the defendant for the subsequent conversion by him.

In addition to the above objections, which rest upon general principles, the defendant further contends, that there are cir-

cumstances existing in the present case, which should take it out of the operation of the rule before stated.

1. That this property was susceptible of a division into parcels, and the plaintiff might have taken from the common property an equal quantity and appropriated the same to his own use. It is unnecessary to consider what would have been the effect of an actual separation and setting out to the plaintiff by the defendant of an exact moiety of the common property, as no such fact exists here. The case only finds that there were remaining in other stores large quantities of salt belonging to the joint concern, but it appears, that the interest of Greene in the same was attached immediately upon his failure by his private creditors, and the plaintiff has not received from this source any equivalent for his share in the salt taken and sold by Greene to the defendant.

2. As to the alleged ratification by the plaintiff of the sale by Greene, the Court perceive no sufficient evidence to sustain that ground. The sale of the other property does not appear to have been made with the assent of the plaintiff, and the demand by him on the defendant in the form of an account for salt sold, charging him with the entire amount of sales by Greene to him, was rather in the nature of an adverse claim, than a ratification of that sale, and must have been so understood by both parties.

3. Nor can any defence be sustained upon the supposed lien accruing to Greene by reason of his paying or assuming to pay the duties to the custom-house, under the circumstances disclosed in the case.

The plaintiff is therefore entitled to recover of the defendant the value of one half of the salt which came to the possession of the defendant and which has been sold by him. The measure of damages is the value of the property at the time of the conversion. This occurred when the defendant made the sales in April, 1837, and the value of the property is to be estimated with reference to that time.

*Judgment for the plaintiff.*